1  PATRICK C. STOKES, SBN 251558
   EMILY J. TEWES, SBN 318439
2  **JACKSON LEWIS P.C.**
   333 West San Carlos St., Ste. 1625
3  San Jose, CA 95110
   Telephone: (408) 579-0404
4  Facsimile: (408) 454-0290
   Email: patrick.stokes@jacksonlewis.com
5         emily.tewes@jacksonlewis.com

6  Attorneys for Defendant
   STANFORD FEDERAL CREDIT UNION
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | JOCELYN TRIGUEROS, individually, and on behalf of other members of the general public, similarly situated; | Case No.: |
12 | | **CLASS ACTION** |
13 | Plaintiff, | **DEFENDANT STANFORD FEDERAL CREDIT UNION'S NOTICE OF REMOVAL** |
14 | v. | |
15 | | **[28 U.S.C. §§ 1331, 1332, 1441, 1446, 1453]** |
16 | STANFORD CREDIT UNION, an unknown business entity; CARDTRONICS USA, INC., a Delaware corporation; ATM NATIONAL, LLC d/b/a ALLPOINT NETWORK, a Delaware limited liability company; and DOES 1 through 50, inclusive, | (Filed concurrently with Notice of Removal, Declaration of Debbie Pierce, Declaration of Patrick Stokes, and Civil Case Cover Sheet) |
17 | | |
18 | | Superior Court Case No. 21CV375168 |
19 | Defendants. | State Complaint Filed: 01/08/2021 |

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Stanford Federal Credit Union, ("Defendant" or "SFCU") removes the above-entitled action to this Court from the Superior Court of the State of California, County of Santa Clara, pursuant to 28 U.S.C. § 1441.  Defendant invokes this Court's original jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act).  Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff Jocelyn Trigueros ("Plaintiff") and without conceding that Plaintiff has pled claims upon which relief can be granted.  This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND.

1. On January 8, 2021, Plaintiff filed a class action Complaint ("the Complaint") in the Superior Court of the State of California, County of Santa Clara, entitled *Jocelyn Trigueros v. Stanford Federal Credit Union, et al.*, Case No. 21CV375168  A true and correct copy of the Complaint is attached as **Exhibit A** to the concurrently-filed Declaration of Patrick Stokes ("Stokes Decl."). A true and correct copy of the corresponding Summons is attached as **Exhibit B** to Stokes Decl.  A true and correct copy of the corresponding Civil Case Cover Sheet is attached as **Exhibit C** to Stokes Decl.

2. Plaintiff served the Complaint and Summons on Defendant on January 12, 2021. A true and correct copy of the corresponding Proof of Service is attached to Stokes Decl. as **Exhibit D**.

3. The Complaint remains Plaintiff's operative pleading in this action as of the date of the filing of this Notice of Removal.

4. **Exhibits A–D** constitute all the pleadings that have been filed or served by or against Defendant in this action as of the date of the filing of this Notice of Removal.

## II. REMOVAL IS TIMELY.

5. Pursuant to 28 U.S.C. § 1446(b), a defendant has 30 days to file a Notice of Removal, measured from the date the defendant receives or is served with the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

6. According to Plaintiff's own Proof of Service in this action, Plaintiff served Defendant with the Complaint on January 12, 2021. (Stokes Decl. Ex. C.)

7. Measured from January 12, 2021, Defendant's deadline to file this Notice of Removal with this Court is February 11, 2021.

8. Defendant is filing this Notice of Removal with this Court on February 11, 2021.

9. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. NOTICE.

10. Defendant will promptly serve this Notice of Removal on all parties and promptly file a copy of this Notice of Removal with the Clerk of the Superior Court, County of Santa Clara, as required by 28 U.S.C. § 1446(d).

## IV. PLAINTIFF'S ALLEGATIONS.

11. The Complaint alleges that Plaintiff brings this action on behalf of herself and a putative class of individuals consisting of all current and former hourly-paid or non-exempt employees of Defendant ("Class Members") at any time during the period from July 17, 2016, to final judgment (the "Class Period"). (Stokes Decl., Ex. A.)

12. Plaintiff alleges that all Defendants are employers and/or joint employers of herself and all Class Members. (*Id.*)

13. Plaintiff alleges that Defendants are liable to Plaintiff and Class Members for the following:

    a. Failure to pay Plaintiff and Class Members for overtime pursuant to California Labor Code §§ 510 and 1198. (*Id.*)

    b. Failure to provide Plaintiff and Class Members with meal periods pursuant to California Labor Code §§ 226.7 and 512(a) and failure to pay meal period premiums pursuant to California Labor Code § 226.7. (*Id.*)

    c. Failure to provide Plaintiff and Class Members with rest periods pursuant to California Labor Code § 226.7 and failure to pay rest period premiums pursuant to California Labor Code § 226.7. (*Id.*)

   d. Failure to pay Plaintiff and Class Members the applicable minimum wage pursuant to California Labor Code §§ 1194 and 1197. (*Id.*)

   e. Failure to pay Plaintiff and Class Members all wages due upon discharge pursuant to California Labor Code § 201 and 202. (*Id.*)

   f. "Intentionally and willfully" failing to furnish Plaintiff and Class Members with "complete and accurate" wage statements pursuant to California Labor Code § 226(a).

   g. "Intentionally and willfully" failing to reimburse Plaintiff and Class Members for all necessary business-related expenses and costs pursuant to California Labor Code §§ 2800 and 2802. (*Id.*)

   h. For additional civil penalties pursuant to California Labor Code §§ 2698, 2699, 210, 1197.1, and California Code of Regulations Title 8 § 11040, for each of Defendant's alleged violations of California Labor Code §§ 510, 1194, 1197, 1198, 226.7, 512, 201, 202, 203, 204, 226, 1174, 1776, 2800, and 2802. (*Id.*)

   i. Unfair and unlawful business practices pursuant to California Business and Professions Code § 17200, et seq. (*Id.*)

## V. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

14. Plaintiff brings this action as a putative class action.[1]  Removal based upon the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because: (1) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class members in all proposed classes is 100 or greater; and (3) diversity of citizenship exists between at least one putative class member and Defendant in this matter.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l*

---

[1] Defendant denies that this action can properly proceed as a class action.  Defendant reserves the right to contest at the appropriate time, that this action can properly proceed as a class action.

*Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010). Although Defendant denies Plaintiff's factual allegations and denies that Plaintiff or Class Members are entitled to recover any amount from Defendant in this action, all requirements for jurisdiction under CAFA are met in this case.

### A. The Putative Class Has More Than 100 Members.

15. To remove under CAFA, the aggregate number of putative class members in all proposed classes must be greater than 100.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B); *United Steel*, 602 F.3d at 1090, 1090 n.2.  Plaintiff's Complaint defines the putative class in this action as all current and former hourly-paid or non-exempt employees of Defendants ("Class Members") in California at any time during the period from July 17, 2016, to final judgment (the "Class Period").  (Stokes Decl. Ex. A at ¶ 15.)  Defendant SFCU employed 254 hourly-paid, non-exempt employees in California during the period from July 17, 2016, through January 20, 2021. (Declaration of Debbie Pierce in Support of Defendant Stanford Federal Credit Union's Notice of Removal ("Pierce Decl.") at ¶ 11.)  Accordingly, the aggregate number of putative class members in all proposed classes in this action exceeds the CAFA threshold by a margin of 154 class members.

### B. Diversity Of Citizenship Exists.

16. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2)(a) (under CAFA's minimal diversity requirements, diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *United Steel*, 602 F.3d at 1089–90 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

17. For diversity purposes, a corporation is considered a citizen of any state by which it is incorporated and of the state where it has its principal place of business. (28 U.S.C. § 1332(c)(1)).  The Supreme Court has adopted the "nerve-center" test to determine in which state a corporation has its principal place of business.  *Hertz Corp. v. Friend*, 559 U.S. 77, 93, 130

S. Ct. 1181, 1192 (2010). In applying the nerve center test, the Ninth Circuit Court of Appeals has observed "the nerve center test focuses on where the enterprise's decisions are made, as opposed to carried out, and thus centers on the 'brains' of an enterprise, not the 'brawn.'" *See, United States v. Chao Fan Xu,* 706 F.3d 965, 976 (9th Cir. 2012) (holding the nerve center will usually be the state where the corporation has its headquarters).

18. Defendant Cardtronics USA, Inc., is a Delaware Corporation with its corporate headquarters located in Houston, Texas. Accordingly, Cardtronics USA, Inc., is a citizen of the State of Delaware and of the State of Texas.

19. For purposes of CAFA jurisdiction, an unincorporated association is a citizen of the state where it has its principal place of business and of the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10). See *Lafountain v. Meridian Senior Living*, No. CV 15-03297-RGK (PJWx), 2015 U.S. Dist. LEXIS 84134, at *5 n.2 (C.D. Cal. Jun. 29, 2015); *Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 705 (4th Cir. 2010) (under CAFA, an LLC is a citizen of the State under whose laws it is organized and the State where it has its principal place of business); *Marroquin v. Wells Fargo, LLC*, No. 11-CV-163-L-BLM, 2011 U.S. Dist. LEXIS 10510, 2011 WL 476540 (S.D. Cal. Feb. 3, 2011) (applying Ferrell to find that minimum diversity existed).

20. Defendant ATM National, LLC, is a Delaware Limited Liability Company with its corporate headquarters located in Houston, Texas. Accordingly, ATM National, LLC, is a citizen of the State of Delaware and of the State of Texas.

21. SFCU acknowledges *Hancock Fin. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 492 F.2d 1325 (9th Cir. 1974), held that the provisions of 28 USC § 1332(c) do not apply to federally chartered corporations. However, *Hancock* did not consider whether its conclusion extended to CAFA jurisdiction, and the more reasoned decision of the Fourth Circuit in *Navy Fed. Credit Union v. Ltd. Fin. Servs., LP*, 972 F.3d 344, 364 (4th Cir. 2020) has reached the conclusion that the provision of 28 USC § 1332(c)(1) deeming a corporation to be a citizen of the State or foreign state where it has its principal place of business, does apply to federally chartered corporations.

22. Defendant SFCU, is a federally-chartered credit union with its corporate

headquarters located in Palo Alto, California. Accordingly, this Court should consider SFCU a citizen of the State of California.

23. "An individual is a citizen of the state in which he is domiciled. . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

24. The Complaint alleges that Plaintiff is resident of the State of California. (Stokes Decl., Exh. A) Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes.

25. The following individual Class Members now reside and are domiciled as follows. Stacey Jefferson is currently domiciled in the State of Texas. Joanne Becker is currently domiciled in the State of Colorado. Alex Dondoyano is currently domiciled in the State of Nevada. (Pierce Decl. at ¶ 17.)

26. Accordingly, for purposes of determining diversity jurisdiction pursuant to CAFA, Stacey Jefferson is a citizen of the State of Texas, Joanne Becker is a citizen of the State of Colorado, and Alex Dondoyano is a citizen of the State of Nevada.

27. Based on the above, the minimal diversity requirement of CAFA is met, in that at least one putative class member is a citizen of a state different from at least one defendant.

28. Accordingly, this action satisfies the "minimal diversity" requirement under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

29. It is not necessary for any other defendant to join in this removal as no other defendants have yet appeared in the action.

30. It is not necessary for any other defendant to join in this removal as CAFA does not require unanimous consent of defendants as a precondition to removal under 28 U.S.C. § 1453(b).

///

### C. The Amount in Controversy Exceeds $5,000,000.

31.     Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013). Because Plaintiff has not expressly pled a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

32.     Defendant's burden to establish the amount in controversy is the preponderance of the evidence standard. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). *See also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted).

33.     A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci America, Inc.*, Case No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, Case No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. U.S. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015). ("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted). *See also LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs

are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what Defendants will actually owe. *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted).

34. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Roa v. TS Staffing Servs., Inc.*, Case No. 2:14-cv-08424-ODW (MRW), 2015 U.S. Dist. LEXIS 7442, at *4–5 (C.D. Cal. Jan. 22, 2015). However, as detailed below, Defendant has both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.

35. Although Defendant denies Plaintiff's factual allegations and denies that Plaintiff or the classes he seeks to represent are entitled to any relief, Plaintiff's allegations have more likely than not put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2]

36. Plaintiff alleges that Defendant committed nine distinct categories of unlawful conduct as to Plaintiff and all Class Members, continuously, over a four-year period.

37. Plaintiff's claims that Defendant failed to provide Plaintiff and Class Members with rest and meal periods pursuant to California Labor Code §§ 226.7 and 512, and the IWC Wage Orders place $3,050,000 in controversy, as follows.

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendant's references to potential damage amounts based on Plaintiff's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims are without merit and that Defendant is not liable to Plaintiff or any putative Class Member in any amount. In addition, Defendant denies that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commcn's, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

     a. Plaintiff alleges that she and each Class Member were denied meal and rest periods.

     b. During the Class Period, SFCU employed the following numbers of hourly-paid, non-exempt employees in full-time and part-time status during the following time periods:

         i. July 16th - December 31st, 2016: 94 full-time and zero (0) part-time.

         ii. January 1st - December 31st, 2017: 126 full-time and one (1) part-time.

         iii. January 1st - December 31st, 2018: 146 full-time and one (1) part-time.

         iv. January 1st - December 31st, 2019: 161 full-time and two (2) part-time.

         v. January 1st - December 31st, 2020: 160 full-time and zero (0) part-time.

         vi. January 1st - 20th, 2021: 138 full-time and zero (0) part-time. (Pierce Decl. at ¶ 15.)

     c. During the Class Period, SFCU's hourly-paid, non-exempt, full-time employees regularly worked the following work hours:

         i. Eight (8) to nine (9) work hours per workday;

         ii. Five workdays per workweek; and

         iii. Forty (40) to forty-five (45) work hours per workweek. (Pierce Decl. at ¶ 12.)

     d. During the Class Period, the mean-average straight-time hourly wages SFCU paid its hourly-paid, non-exempt employees were as follows:

         i. July 16th through December 31st, 2016: $27.70 per hour.

         ii. January 1st through December 31st, 2017: $27.59 per hour.

         iii. January 1st through December 31st, 2018: $28.87 per hour.

|   |   |   |
|---|---|---|
| | | iv. January 1st through December 31st, 2019: $31.79 per hour. |
| | | v. January 1st through December 31st, 2020: $33.07 per hour. |
| | | vi. January 1st through 20th, 2021: $33.41 per hour. |
| | e. | Pursuant to California Labor Code § 226.7, 512 and IWC Order No. 1-2001, § 11, an employee that works an eight-hour shift is entitled to one unpaid meal period of at least 30 minutes duration.  An employer that fails to provide a meal period is liable to the aggrieved employee for one hour of pay at the employee's regular rate. |
| | f. | Similarly, under California Labor Code § 226.7, 512 and IWC Order No. 1-2001, § 12, an employee that works an eight-hour shift is entitled to two paid rest periods of at least ten minutes duration.  An employer that fails to provide a rest period is liable to the aggrieved employee for one hour of pay at the employee's regular rate. |
| | g. | Accordingly, as to employees working an eight-hour shift, an employer that fails to provide meal and rest periods incurs liability for two hours of pay at the employee's straight-time rate for each workday. |
| | h. | An employee regularly working five days per week throughout a calendar year, excluding two weeks for vacations and holidays, will work a total of 250 workdays per year (50 weeks multiplied by 5 days per week). |
| | i. | Excluding vacation days at the same rates, and based on the numbers of full-time, hourly-paid, non-exempt employees employed, and the average rates paid, Plaintiff's claim for alleged meal period and rest period violations place the following amounts in controversy over the following time periods: |

   i. July 16th through December 31st, 2016: $598,874.

   ii. January 1st through December 31st, 2017: $1,738,170.

   iii. January 1st through December 31st, 2018: $2,107,510.

   iv. January 1st through December 31st, 2019: $2,559,095.

|   |   |   |
|---|---|---|
|   | v. | January 1st through December 31st, 2020: $2,645,600. |
|   | vi. | January 1st through 20th, 2021: $92,211.60. |
|   | vii. | Total for July 16, 2016 through January 20, 2021: $9,741,460.60. |

j. Accordingly, Plaintiff's claims based on allegedly denied meal and rest periods and unpaid meal and rest period premiums, alone, place $9,741,460.60 in controversy.

38. Plaintiff also seeks recovery of attorneys' fees (Stokes Decl., Ex. A.) SFCU denies that Plaintiff is entitled to recover any amount for attorneys' fees. However, for purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Applying this benchmark to Plaintiff's claims of alleged denial of meal and rest periods places an additional $2,435,365.15 in controversy.

39. Therefore, even where only a very limited sub-set of Plaintiff's numerous claims in this action are taken into account, (alleged denial of meal and rest periods, unpaid meal and rest period premiums, and benchmarked attorneys' fees based only on those claims), the allegations of Plaintiff's complaint place approximately $12,176,825.75 in controversy, which meets the CAFA threshold of $5,000,000 by a margin of $7,176,825.75.

40. Based on the foregoing, all requirements for CAFA removal are satisfied, and removal is proper.

## VI. SUPPLEMENTAL JURISDICTION.

34. To the extent any of Plaintiff's claims are not removable under CAFA, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because they are part of the same common nucleus of operative facts over which this Court has original jurisdiction.

## VII. VENUE.

35. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to

the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  As stated above, Plaintiff brought this action in the Superior Court of California, County of Santa Clara.  Thus, venue properly lies in the United States District Court for the Northern District of California.  28 U.S.C. §§ 84(a), 1441(a).

## VIII. CONSENT.

36. It is not necessary for any other defendant to join in this removal, as no other defendants have yet appeared in the action, and CAFA does not require unanimous consent of defendants as a precondition to removal under 28 U.S.C. § 1453(b).

## IX. CONCLUSION.

Based on the foregoing, Defendant requests that this action be removed to this Court.  If any question arises as to the propriety of removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument demonstrating that removal of this action is proper.

Dated:  February 11, 2021                                    JACKSON LEWIS P.C.

                                                             By:   /s/ Patrick C. Stokes
                                                                   Patrick C. Stokes
                                                                   Attorneys for Defendant
                                                                   Stanford Federal Credit Union

4835-9662-1787, v. 1