**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOCELYN TRIGUEROS,<br>　　　　Plaintiff,<br>　　v.<br>STANFORD FEDERAL CREDIT UNION,<br>　　　　Defendant. | Case No. 21-cv-01079-BLF<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[Re: ECF 17] |

Plaintiff Jocelyn Trigueros brings this putative class action against her former employer, Defendant Stanford Federal Credit Union, for violations of California wage and hour laws. *See* Decl. of Patrick Stokes, Ex. A, Compl., ECF 1-2. Defendant removed the action to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal ("Not."), ECF 1. Before the Court is Plaintiff's motion to remand for lack of jurisdiction under CAFA. Remand Mot., ECF 17. This matter is suitable for disposition without oral argument and thus the hearing set for September 2, 2021, is vacated, and the matter is hereby submitted for decision. For the following reasons, the Court GRANTS Plaintiff's motion to remand.

**I.　BACKGROUND**

Plaintiff Jocelyn Trigueros was an hourly paid, non-exempt employee of Defendant from April 2019 to February 2020. Compl. ¶ 20. Plaintiff brings this action on behalf of a purported class including "[a]ll current and former hourly-paid or non-exempt employees of [Defendant] within the State of California at any time during the period from July 17, 2016, to final judgment." *Id*. ¶ 15. Plaintiff primarily alleges Defendant knowingly failed to pay employees for overtime

work, provide required rest and meal periods, pay penalty and payment for hours worked during the required meal and rest periods, pay wages owed to employees when they were discharged, and provide accurate wage statements. *Id*. ¶¶ 27-44. The Complaint does not specify the amount of damages sought.

On February 11, 2021, Defendant removed the action to this Court, claiming this Court had diversity jurisdiction under CAFA because "(i) diversity of citizenship exists between at least one putative class member and one Defendant; (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs." Not. ¶ 6 (citing 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B); 1453).

Plaintiff filed this remand motion on March 15, 2021. *See* Remand Mot.

## II. LEGAL STANDARD

A civil action brought in a state court can be removed if the complaint contains a federal claim over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). Pursuant to CAFA, federal courts have original jurisdiction over state law actions where the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs), the number of members of all proposed plaintiff classes in the aggregate is more than 100, and where any member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d). Typically, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

In seeking removal under CAFA, the defendant bears the burden of establishing federal

2

jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *See Dart Cherokee*, 135 S. Ct. at 553–54 (citing 28 U.S.C. § 1446(c)(2)(B)). To satisfy this burden, the defendant need include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" in its notice of removal. *Dart Cherokee*, 135 S. Ct. at 554. But "when the plaintiff contests, or the court questions, the defendant's allegation," the defendant must submit evidence to establish the amount in controversy by a preponderance of the evidence. *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)); *see also Ibarra*, 775 F.3d at 1195. The plaintiff may submit evidence to the contrary. *Ibarra*, 775 F.3d at 1195 (citing *Dart Cherokee*, 135 S. Ct. at 554). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

## III. DISCUSSION

Plaintiff's motion to remand disputes Defendant's arguments regarding the diversity and amount in controversy requirements for proper removal under CAFA. *See* Remand Mot. Plaintiff also argues both the "local controversy" and "home state" exceptions to CAFA jurisdiction apply to this case. Remand Mot. at 9. The motion further requests jurisdictional discovery related to the CAFA exceptions. *Id.* Finally, Plaintiff seeks sanctions against Defendant. *Id.* at 10. The Court finds Defendant has failed to meet its burden regarding the amount in controversy. Because the motion must be granted on this basis alone, the Court need not reach Defendant's arguments regarding CAFA diversity nor Plaintiff's arguments regarding CAFA exceptions and jurisdictional

discovery. Additionally, for reasons articulated below, the Court denies the Plaintiff's motion for sanctions.

### A. CAFA Jurisdictional Requirements

Defendant must prove the following criteria by a preponderance of the evidence to meet its burden of demonstrating this Court's jurisdiction under CAFA: (1) the putative class contains at least 100 members; (2) at least one plaintiff is diverse in citizenship from any defendant (*i.e.*, minimal diversity); and (3) the aggregate amount in controversy is greater than $5,000,000. *See Ibarra*, 775 F.3d at 1195 (citing 28 U.S.C. § 1332(d)). Plaintiff only challenges the second two criterion arguing that Defendant has not and cannot prove it has met the diversity and amount in controversy requirements. Remand Mot. at 1. The Court begins with the arguments regarding the amount in controversy.

#### 1. Amount in Controversy

Plaintiff argues that Defendant has not provided sufficient evidence justifying its revised calculations alleging an amount in controversy of $6,154,514.50, *see* Opp. at 10, and that Defendant's calculations included damages outside the scope of the relevant statutes. Remand Mot. at 8-9; Reply at 3-5, ECF 21. Specifically, Plaintiff argues that Defendant's assumptions relating to meal and rest period violations, unpaid overtime, and waiting time penalties each lack sufficient evidence. Reply at 3-4. Plaintiff argues further that Defendant's estimation of wage statement penalties and attorneys' fees at controversy include statutory damages that are not available. Mot. at 8-9, Reply at 5. Defendant initially claimed the amount in controversy was $12,176,825.75, Not. at 12, but revised its estimate to $6,154,514.50 in its opposition brief, Opp. at 10. The Court finds that Defendant's revised estimation does not satisfy CAFA's amount in controversy requirement for the reasons discussed below.

##### a. Meal and Rest Period Premiums

California Labor Code Section 226.7 requires that an employer pay an additional hour of

4

pay anytime it fails to provide a meal or rest period. Plaintiff argues that Defendant's revised estimate of meal and rest period premiums lacks sufficient evidentiary support. Remand Mot. at 6-8, Reply at 3-4. Relying on a 20% violation rate, Defendant estimates $2,727,608.97 in controversy due to meal and rest period premiums. Opp. at 5-8. Using the employee information below, Defendant calculated meal period violation premiums by multiplying the number of workweeks for each period, the number of employees for the same, the average hourly wages and the 20% violation rate. *Id*.

| Period | Workweeks / Shifts | Full-Time, Hourly-Paid, Non-Exempt Employees | Average Hourly Wages |
|---|---|---|---|
| July 16 - December 31, 2016 | 23 workweeks, 115 shifts | 94 | $27.70 per hour |
| January 1 - December 31, 2017 | 50 workweeks, 250 shifts | 126 | $27.59 per hour |
| January 1 - December 31, 2018 | 50 workweeks, 250 shifts | 146 | $28.87 per hour. |
| January 1 - December 31, 2019 | 50 workweeks, 250 shifts | 161 | $31.79 per hour. |
| January 1 - December 31, 2020 | 50 workweeks, 250 shifts | 160 | $33.07 per hour. |
| January 1 – January 20, 2021: | 2 workweeks, 10 shifts | 138 | $33.41 per hour. |

*See id*. at 7 (citing Pierce Decl. ISO Opp. ¶¶ 19, 25, ECF 20-1). To calculate rest period violation premiums, Defendant factored in two rest periods per shift. Opp. at 8. "If the violation rate *per rest period* is 20%, then the probability of at least one violation occurring during a shift is 36%."[1] *Id*.

---

[1] "This is determined through simple calculation of the probability of no rest break violations occurring in a sequence of two (80% multiplied by 80%), which is 64%. The probability of at least one rest break violation occurring during an eight hour shift is, therefore, 36% (100% minus 64%)." Opp. at 8.

5

The result equals an estimate of $2,727,608.97 in controversy due to meal and rest period premiums. Opp. at 8.

Plaintiff argues that the Complaint only alleges Defendant's failure to provide meal and rest periods and pay attendant premiums. Reply at 3. Accordingly, Plaintiff argues that "Defendant's failure to provide compliant meal and rest periods could easily be once every two weeks, once a month, or once every three months." *Id.* (citing *Marshall v. G2 Secure Staff, LLC*, No. 2:14-CV-04322-ODW, 2014 WL 3506608, at *1 (C.D. Cal. July 14, 2014)). Defendant argues the regularity of violations is based on Plaintiff's allegation that Defendant violated the meal and rest period requirements as "[a]s a policy and practice…." Opp. at 6-7 (citing Comp. ¶ 100). Defendant cites several cases following *Ibarra* in which courts have found a violation rate of 20% or more reasonable based on similar or identical language found in the relevant complaint. Opp. at 6 (citing *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Danielsson v. Blood Centers of Pac.*, No. 19-cv-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (citing cases); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19-cv-1675-GPC, 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) (citing cases); *Oda v. Gucci Am., Inc.*, No. 2:14-cv-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015); *Avila v. Rue21*, *Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020)).

"Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods." *Chavez*, 2019 WL 1501576, at *3 (collecting cases).

For example, In *Danielsson*, the plaintiff had alleged a "pattern or practice" of meal and rest period violations by the defendant. 2019 WL 7290476, at *6. The defendant in *Danielsson* relied on 20% violation rate to calculate the amount in controversy. *Id*. In response, the plaintiff argued that "the record she provided, which included eleven employees who worked fewer than

6

forty hours per week, undermines the reasonableness of [the defendant's] calculation" and therefore not all employees were entitled to meal breaks with each shift. *Id*. Still, the court in *Danielsson* found the defendant's 20% violation rate reasonable. *Id*. at *7. The court explained that (1) the defendant's assumption was reasonable given that plaintiff had alleged a "pattern and practice" of meal and rest period violations; (2) the defendant "need not prove the exact violation rate"; and (3) because the amount in controversy is an estimate rather than a precise computation of the amount at stake, the plaintiff had not shown that the assumed violation rate was unreasonable. *Id*. at *6-7.

Like *Danielsson*, Plaintiff has alleged a "policy and practice" of meal and rest period violations by Defendant. Compl. ¶ 100. Defendant's assumption of a 20% violation per shift is substantially similar. Opp. at 6, Pierce Decl. ¶¶18-22, 24-25. Unlike in *Danielsson*, Plaintiff here has provided no evidence to suggest Defendant's assumption of a 20% violation rate is unreasonable. *See* Reply.

In reply, Plaintiff cites a single case in which a once per week violation rate estimate was found to be insufficient because it lacked evidentiary support. Reply at 3 (citing *Marshall*, 2014 WL 3506608, at *3). However, the case predates the Ninth Circuit clarifying the evidence a defendant must produce to demonstrate the amount in controversy requirement in *Ibarra*, 775 F.3d at 1198–99, and goes against the weight of authority in this District where courts have found a violation rate of at least 20% plausible. *See, e.g.*, *Danielsson*, 2019 WL 7290476, at *7; *Chavez*, 2019 WL 1501576, at *3. Plaintiff's argument fails to address the numerous cases cited by Defendant that follow *Ibarra* and have found an assumed 20% violation rate reasonable because of similar, if not identical, allegations of a pattern, policy, or practice of violations.

The Court echoes the holding in *Danielsson* that "CAFA does not require Defendant 'to comb through its records to identify and calculate the exact frequency of violations, nor does it require Defendant 'prove it actually violated the law at the assumed rate.'" *Danielson*, 2019 WL

7

7290476, at *7 (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) and *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)) Instead, Defendant must provide only some reasonable justification for its assumptions. Defendant here has provided a reasonable justification generally accepted by similarly situated courts that meets the preponderance standard. Accordingly, the Court finds that Defendant's meal and rest period amount in controversy estimate of $2,727,608.97 is plausible and supported by a preponderance of the evidence.

### b. Unpaid Overtime

California Labor Code Section 510 requires employers to pay non-exempt employees 1½ times their regular rate of pay for any hours worked over 8 in one day or 40 in one week. *Chavez*, 2019 WL 1501576, at *5. Plaintiff argues that Defendant cannot justify the assumptions used in its overtime violation calculations, so those calculations must fail. Reply at 4. Defendant estimates the total amount in controversy for unpaid overtime is $487,073 based on the same 20% violation rate. Opp. at 8. Defendant further assumes that for each alleged unpaid overtime violation, Defendant would have paid the employee at issue for one hour at their straight-time hourly rate. *Id*. If these were in fact unpaid overtime violations, the employee at issue should have been paid at a rate of 1.5 times the straight-time rate. *Id.* Using the same values listed in the table above, Defendant first multiplied the number of shifts in each of the six time periods by 20% (the violation rate). *Id.* Defendant multiplied these six sums by the number of employees in each respective time period. *Id.* Then, Defendant multiplied those sums by 0.5 (the difference between the straight-time rate and the overtime rate). *Id.* The total of those six numbers (one for each time period) is $487,073. *Id.*

Plaintiff argues that Defendant has provided no evidence to support its assumption that the average shift length was 8-9 hours, and the length of the shift is relevant because it determines whether a worker would be entitled to overtime damages or minimum wage damages. Reply at 4.

8

Thus, Plaintiff argues, Defendant's calculations are impermissibly speculative. *Id.*

In support of this position, Plaintiff cites *Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451, at *3 (N.D. Cal. Jan. 9, 2018). As Plaintiff correctly points out, the court in *Vasquez* held that the way in which unpaid wages are counted "for purposes of calculating the amount in controversy depends on whether employees worked more or less than 8 hours per day or 40 hours per week." *Id.* at *3. In *Vasquez*, though, the defendants' declaration did not offer any evidence of regarding how many of its employees were generally full-time, such that any extra unpaid work would presumptively be overtime. *Id.* Accordingly, the court in *Vasquez* held that the unpaid wages should be counted as minimum wage damages rather than overtime damages in the absence of evidence to suggest they were in fact overtime hours. *Id.* at *11.

Unlike in *Vasquez*, Defendant here has provided evidence, in the form of a declaration from its director of human resources, supporting its assumptions regarding the estimation of unpaid overtime at issue. Opp. at 7 (citing Pierce Decl. ISO Opp. ¶ 18). The Pierce Declaration relied on by Defendant indicates that its average shift length was eight to nine hours. Opp. at 7 (citing Pierce Decl. ISO Opp. ¶ 18). While the only available information in *Vasquez* regarding full or part-time status was an allegation that employees were regularly required to work more than five hours, the Pierce Declaration provides the exact number of part-time employees. Pierce Decl. ISO Opp. ¶ 21. According to the Pierce Declaration, the breakdown of full time versus part time non-exempt employees are as follows:

    a) July 16th through December 31st, 2016: 94 full-time and zero (0) part-time.
    b) January 1st through December 31st, 2017: 126 full-time and one (1) part-time.
    c) January 1st through December 31st, 2018: 146 full-time and one (1) part-time.
    d) January 1st through December 31st, 2019: 161 full-time and two (2) part-time.
    e) January 1st through December 31st, 2020: 160 full-time and zero (0) part-time.

      f) January 1st through 20th, 2021:138 full-time and zero (0) part-time.

*Id.*

Accordingly, the Court finds that Defendant's estimate of $487,073.30 in controversy for unpaid overtime wages plausible and supported by the preponderance of the evidence.

### c. Waiting Time Penalties

"Under California Labor Code § 203, an employer must pay daily wages for up to 30 days if it fails to pay all wages due within 72 hours of termination or resignation." *Chavez*, 2019 WL 1501576, at *3. This penalty accrues daily until the wages are paid. *Id.* (citing Cal. Lab. Code § 203(a)).

Defendant estimates an amount in controversy of $847,629.60 for waiting time penalties, *see* Opp. at 9, and Plaintiff's primary objection is to Defendant's use of a 100% violation rate. Reply at 4. Plaintiff argues that she did not allege the entire putative class was entitled to waiting time penalties. *Id*. Plaintiff points to qualifying language in her Complaint which specifically states that Plaintiff and "*other* class members"—not Plaintiff and *all* class members—seek waiting time penalties. *Id.* (emphasis added) (citing Compl. ¶¶ 82-86). Further, Plaintiff argues that she never alleged the entire putative class is entitled to the maximum 30 days of waiting period penalties. Reply at 4.

Defendant estimates the total amount in controversy for waiting time penalties is $847,629.60. Opp. at 9. As previously noted, Defendant relies on a 100% violation rate for waiting period penalties. *Id.* During the six relevant time periods listed in the table above, Defendant terminated 5 employees, 18 employees, 31 employees, 39 employees, and 24 employees, and 0 employees, respectively. *Id.* (citing Pierce Decl. ISO Opp., ¶ 22). Defendant then multiplied the number of terminated employees for each period by "the amount of waiting time penalties due for 30 days' wages, at eight hours per day, and at the average wage rate for the time period." Opp. at

9. The total amount calculated for all six periods equals $847,629.60. *Id.*

In support of its reliance on a 100% violation rate, Defendant cites *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *6 (N.D. Ca. Oct. 25, 2019). In *Kastler*, the plaintiff had alleged:

> [Defendant] knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation.

*Id.* As a result, the court in Kastler held that, "[b]ecause Plaintiff alleges that Defendant failed to pay overtime and minimum wages and meal and rest break premiums to present, using the thirty day maximum is inherently reasonable." *Id.* (citing *Chavez*, 2019 WL 1501576 at *4).

Similarly, in *Kastler*, the complaint in *Chavez* included a general allegation that, "by failing to pay minimum wage, overtime wages, and meal and rest break premiums, [the defendant] had a 'pattern and practice' of failing to pay class members 'the wages owed to them upon discharge or resignation.'" 2019 WL 1501576 at *3. The plaintiff in *Chavez* argued that a 100% violation rate was inappropriate because his complaint stated that he and other class members—not all class members—seek waiting time penalties. *Id.* Despite the plaintiff's objections, the court held that, "[b]y tying the unpaid final wage claim to his other claims, [the plaintiff] makes [the defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [the defendant] during the statutory period was due unpaid wages." *Id.* at *4.

Like in *Kastler* and *Chavez,* Plaintiff has tied her waiting time penalties to Defendant's alleged failure to pay minimum wage, overtime wages, and provide required meal and rest breaks. Compl. ¶ 104. While Plaintiff does qualify her language to suggest that not all putative class members seek waiting period penalties, Defendant's estimation of waiting period penalties does not include all putative class members. Opp. at 9. Instead, Defendant's estimation accounts for all

11

*terminated* employees. *Id*. Because Plaintiff has tied her waiting period claims to her other claims, and because Defendant specifically accounts for only terminated employees in its use of a 100% violation rate, the Court finds Defendant's estimation of $847,629.60 for the amount in controversy due to waiting time penalties plausible and supported by a preponderance of the evidence.

### d. Wage Statement Penalties

"Under California Labor Code § 226(e), an employer owes a penalty of $50 per initial pay period and $100 for each subsequent pay period when it fails to provide complete and accurate wage statements to employees, with an aggregate cap of $4,000 per employee." *Chavez*, 2019 WL 1501576, at *3. Defendants estimate an amount in controversy of $861,300 due to wage statement penalties, *see* Opp. at 9-10, and Plaintiff argues that Defendant improperly considers wage statements for employees prior to January 8, 2020, given the one-year statute of limitations on such penalties. Reply at 5 (citing Cal. Lab. Code § 226; *Novoa v. Charter Communs., LLC*, 100 F. Supp. 3d 1013 (E.D. Cal. Apr. 21, 2015)). Defendant assumes that all wage statements would be noncompliant because they would not accurately state the number of hours worked because of Plaintiff's numerous allegations of wage violations. Opp. at 9. Defendant makes the following calculations based on the information from the Pierce Opposition Declaration:

> Under the Labor Code, employers owe $50 per initial pay period and $100 for each subsequent pay period during which they fail to provide employees with complete and accurate wage statements, up to a maximum of $4,000 for each employee. Cal. Lab. Code section 226(e).
> Here, 170 members of the putative class worked more than 40 or more pay periods [*sic*] during the proposed class period. (Pierce Decl. 2, ¶ 24). For this group of employees, the amount of penalties per employee are capped at $4,000. The amount in controversy for this group is the number of employees (170) multiplied by the maximum penalty of $4,000. This amount is $680,000.
> Another 74 members of the putative class worked a mean average of 25 pay periods during the proposed class period. For this group, the amount of penalties per employee is $2,450. The amount in controversy for this group is the number of employees (74)

12

multiplied by $2,450. This amount is $181,300.

*Id*. at 9-10 (citing Pierce Decl. ISO Opp. ¶ 24).

As stated above, Plaintiff argues that penalties under California Labor Code Section 226 have a one-year statute of limitations. Reply at 5 (citing *Novoa*, 100 F. Supp. 3d at 1024). The Court finds that this is the proper statute of limitations for wage statement penalties under Section 226(e). *Reyes v. Sky Chefs, Inc.*, No. 20-CV-08590-LB, 2021 WL 308611, at *4 (N.D. Cal. Jan. 29, 2021).

Defendant's calculation of the amount in controversy due to wage statement violations is exclusively a calculation of wage statement *penalties*, and these are subject to the one-year statute of limitations. Opp. at 9. As a result, Defendant erroneously included an incorrect number of pay periods in its calculation of wage statement penalties that fall outside the statute of limitations. *See id*. For this reason, the Court rejects Defendant's calculation of wage statement penalties and finds that Defendant has not meet its burden of proving any wage statement penalties by a preponderance of the evidence.

### e. Attorneys' Fees

Defendant estimates an amount in controversy amount of $1,230,902.90 for attorneys' fees. Opp. at 10. In opposition to Defendant's calculation of attorneys' fees, Plaintiff first argues that "because Defendant's calculations are based on assumptions that are seemingly plucked from thin air," Defendant's use of a 25% benchmark based on the estimations discussed above is unreasonable. Reply at 5. Second, Plaintiff argues that Defendant erroneously included the amounts at issue from meal and rest period penalties and waiting time penalties when estimating the amount at issue resulting from attorneys' fees. *Id*.

Defendant argues that attorneys' fees will add an estimated $1,230,902.90 to the amount in controversy. Opp. at 10. Defendant arrives at this number using the Ninth Circuit's benchmark rate (25% of potential damages). *Id.* Because the Court has rejected Defendant's estimation of

wage statement penalties, the Court subtracts this amount from Defendant's underlying amount-in-controversy estimate for calculating attorneys' fees in controversy. After adding the estimates for meal and rest period penalties ($2,727,608.97), unpaid overtime ($487,073.30), and waiting time penalties ($847,629.60) and multiplying the total ($4,062,311.87) by 25%, the Court arrives at an attorneys' fees estimate of $1,015,577.97.

In arguing that Defendant has erroneously considered meal and rest period penalties and waiting time penalties in its estimation of attorneys' fees, Plaintiff first argues the award of attorneys' fees must be based in statute since that there is no contractual fee-shifting obligation at play in this case. Remand Mot. at 8 (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir. 1998)). Plaintiff further correctly notes that California Labor Code's relevant fee-shifting provisions do not apply to legal work relating to meal and rest period claims and waiting time penalties. Cal. Lab. Code §§ 218.5, 1194; Remand Mot. at 8 (citing *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018)); Reply at 5. Defendant does not respond to Plaintiff's argument regarding the inapplicability of meal and rest period premiums to the attorneys' fees estimate. Opp. at 10. Defendant exclusively focuses on its argument that the 25% benchmark rate is proper. *Id.* While Plaintiff cites *Fritsch* in support of her argument that meal and rest period premiums should not be considered in the calculation of attorneys' fees at issue, *see* Remand Mot. at 8, Reply at 5, Plaintiff provides no support for her argument that attorneys' fees related to waiting time penalties should be excluded, and this Court is unaware of any authority that excluded these penalties in the attorneys' fees calculation. Accordingly, the Court includes Defendant's estimation of attorneys' fees related to waiting time penalties and considers whether attorneys' fees related meal and rest period premiums should be included in the amount-in-controversy.

In *Fritsch*, the Ninth Circuit held that "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first

14

place." 899 F.3d at 796 (citing *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009)). California Labor Code Section Labor Code section 1194 provides that employees are entitled to recover attorneys' fees in an action for any unpaid "legal minimum wage" or "legal overtime compensation . . . ." California Labor Code Section 218.5 authorizes the prevailing party may recover attorneys' fees "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions . . . ." In *Kirby v. Immoos Fire Protection, Inc.*, the Supreme Court of California held that neither California Labor Code Section 1194 nor Section 218.5 entitle the prevailing party to an award of attorneys' fees for meal and rest period premiums. 53 Cal. 4th 1244, 1254-59 (2012). Because the relevant fee shifting statutes are inapplicable to meal and rest period premiums the Court subtracts $2,727,608.97 from Defendant's calculation of total damages used to calculate the attorneys' fees estimate. *See Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222-JSC, 2014 WL 2199645, at *7 (N.D. Cal. May 27, 2014) (holding "[a]ttorneys' fees are not available on meal period claims under California Labor Code section 226.7" in its amount in controversy analysis); *Frias-Estrada v. Trek Retail Corp.*, No. 20-CV-07471-RS, 2021 WL 1558743, at *7 (N.D. Cal. Apr. 19, 2021) ("Plaintiff rightly notes that . . . the California Labor Code's fee shifting provisions does not apply to meal and rest period claims.")

Accordingly, the court adds $487,073.03 for unpaid overtime and $847,629.60 for waiting time penalties and multiplies that total ($1,334,702.63) by 25% to arrive at an attorneys' fees estimate of $333,675.66. Adding the estimated meal and rest period penalties ($2,727,608.97), unpaid overtime penalties ($487,073.03), waiting time penalties ($847,629.60) and attorneys' fees ($333,675.66) results in a total of $4,395,987.26 in controversy. As a result, Defendant has failed to satisfy CAFA requirements.

### 2. Diversity

Plaintiff further argues that Defendant fails to satisfy CAFA's minimal diversity

requirement. Remand Mot. at 4. However, because the Court has concluded that the amount in controversy requirement has not been met, and therefore the Court lacks jurisdiction under CAFA, the Court need not reach the Parties' arguments regarding diversity.

For these reasons, Plaintiff's motion to remand is GRANTED.

### B. Request for Sanctions

Plaintiff requests monetary sanctions on the basis that Defendant's motion is meritless. Remand Mot. 10. The Court first notes that Plaintiff's request for sanctions is improper, as motions for sanctions must be separately filed in this District. *See* Civ. L.R. 7-8. However, even if this request were properly brought, it would not be successful. Plaintiff alleges that she "made a reasonable and good faith effort to meet and confer to resolve the instant discovery dispute informally without cooperation from Defendant." Remand Mot. at 2. Plaintiff argues that Defendant's removal was meritless and, as a result, Plaintiff asks this Court to "award monetary sanctions of no less than $9,100.00 against Defendant and its counsel of record Jackson Lewis P.C., jointly and severally, for attorneys' fees and costs incurred by Plaintiff in connection with this Motion, pursuant to the Federal Rules of Civil Procedure rule 11 and 28 U.S. Code § 1927." *Id.* at 2. This Court is not persuaded to order any such sanctions.

In the Ninth Circuit, Rule 11 sanctions are appropriate where: (1) attorneys make or use a court filing for an improper purpose; or (2) such a filing is frivolous. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). A "frivolous" argument or claim is one that is "*both* baseless *and* made without a reasonable and competent inquiry." *Id.* (emphasis added).

Plaintiff moves for Rule 11 sanctions on the basis that Defendant filed a meritless motion relying on "factitious calculations that flew in the face of established case law…" Remand Mot. at 10. Plaintiff's argument does not hold water. The Court has already determined that several of Defendant's calculations were reasonable for purposes of CAFA jurisdiction, and even those

16

calculations this Court rejected were not frivolous or factitious. As Defendant notes in its opposition, the declaration evidence provided by Defendant in support of its removal and opposition are "the type routinely accepted as credible evidence to establish CAFA jurisdiction." Opp. at 5 (citing *Archuleta v. Avcorp Composite Fabrication, Inc.,* No. CV 18-8106 PSG (FFMx)*,* 2018 WL 6382049, at *3 (C.D. Cal. Dec. 6, 2018)). Because Defendant has provided such evidence, it can hardly be said that Defendant's claims were "made without a reasonable and competent inquiry."

For these reasons, Plaintiff's request for sanctions is DENIED.

## IV. ORDER

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand. Accordingly, the Court REMANDS this case. The Clerk shall remand this action to the Superior Court of California for the County of Santa Clara and close the case.

**IT IS SO ORDERED.**

Dated: June 28, 2021

_____
BETH LABSON FREEMAN
United States District Judge